**State Court of Fulton County**
**\*\*E-FILED\*\***
**24EV009005**
**10/6/2024 4:15 PM**
**Donald Talley, Clerk**
**Civil Division**

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| TINA MUNN, individually, | ) | |
| | ) | |
| TINA MUNN, as the Court Appointed | ) | |
| Personal Administrator of the Estate of | ) | |
| RICHARD BENJAMIN JORDAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACE AMERICAN INSURANCE | ) | |
| COMPANY, a foreign motor carrier | ) | |
| insurer, | ) | Civil Action No. |
| | ) | |
| NEW PRIME, INC., a foreign motor carrier, | ) | |
| d/b/a PRIME, PRIME INC., or | ) | _____ |
| PRIME TRUCKING, | ) | |
| | ) | |
| TERMINAL INVESTMENT | ) | |
| CORPORATION, a Georgia Corporation, | ) | |
| d/b/a TICO, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JOHN OR JANE DOE ENTITIES & | ) | |
| INDIVIDUALS (1-5), | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW plaintiffs and show the Court as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff Tina Munn is the surviving mother and sole heir of the

decedent Richard Benjamin "Ben" Jordan, she is entitled to bring the claim for his

wrongful death as provided by O.C.G.A. § 51-4-2 and interpreting caselaw, and she may be served with all pleadings and discovery by service on her counsel of record. Jurisdiction and venue are proper in this Court.

2.     Plaintiff Tina Munn as the Court appointed personal administrator for the Estate of Richard Benjamin "Ben" Jordan brings all claims that the Estate is entitled to bring arising out of his wrongful death as provided by O.C.G.A. § 51-4-5 and interpreting caselaw, and she may be served with all pleadings and discovery by service on her counsel of record on behalf of the Estate. Jurisdiction and venue are proper in this Court.

3.     Terminal Investment Corporation (hereinafter "TICO") is a Georgia corporation and private motor carrier, **USDOT #135383**, and it may be served with a copy of its complaint, summons, and discovery on its registered agent as follows:

> Terminal Investment Corporation d/b/a TICO
> C/O Randall S. Booker, Registered Agent
> 746 Wheaton St
> Savannah, GA 301041-5122

Jurisdiction and venue are proper in this Court.

4.     Ace American Insurance Company (hereinafter "ACE") is a foreign motor carrier insurer and it issued **Policy No. XSA H25562197** covering Prime's motor carrier for hire operations and its commercial motor vehicles for the period including October 8, 2022, and it may be served with a copy of plaintiffs' complaint, summons, and discovery on its registered agent as follows:

> Ace American Insurance Company
> C/O C T Corporation System, Registered Agent
> 289 S Culver St.
> Lawrenceville, GA 30046-4805

Jurisdiction and venue are proper in this Court.

5.      Defendant ACE is a proper party to this case as provided by O.C.G.A. § 40-1-112(c) and or § 40-2-140(d)(4).  Jurisdiction and venue are proper in this Court.

6.      New Prime, Inc. d/b/a Prime, Prime Inc. or Prime Trucking (hereinafter "Prime") is a foreign motor carrier for hire, **USDOT # 3706, MC-1406665**, and it may be served with a copy of its complaint, summons, and discovery on its registered agent as follows:

> New Prime, Inc. d/b/a Prime, Prime Inc., or Prime Trucking
> C/O Incorp Services, Inc.
> 9040 Roswell Road, Suite 500
> Atlanta, GA 30350

Jurisdiction and venue are proper in this Court.

7.      Prime has a retained $1,000,000 limits Agreement with Ace American Insurance Company under **Policy No. XSA H25562197**, and Prime considers itself a self "insurer," and it and Ace are subject to a direct action as provided by

O.C.G.A. §§ 40-1-112(c) and or 40-2-140(d)(4).[1]  Jurisdiction and venue are

proper in this Court.

8.      If discovery shows that additional defendants should be added as

parties to the case plaintiffs will move to add or substitute those persons or entities

as defendants for the John Does as provided by the Civil Practice Act.

9.      All conditions precedent in law have been met prior to filing this

action.

---

[1] Prime has not been approved by any regulatory authority of motor carriers in Nebraska, Missouri, Georgia or any other state to self-insure its motor carrier for hire operations, nor does it have a written order, decision, or authorization from the Federal Motor Carrier Safety Administration to self-insure its interstate or intrastate motor carrier for hire operations:

- *See* 49 C.F.R. §§ 387.7(d)(3) & 387.309; *see also* FMCSA Form BMC-40 as provided by 49 U.S.C. § 13906; https://www.fmcsa.dot.gov/registration/form-bmc-40-application-authority-self-insure-under-49-usc-13906; and

- *See also* O.C.G.A. §§ 40-1-50 et seq., 40-1-51, 40-1-53(a), 40-1-54(c), 40-1-57, Ga. Comp. R. & Reg., Georgia Department of Public Safety Transportation Rulebook, ***Motor Carrier Compliance Division, Chapter One – Motor Carrier Safety Regulations***, *§ 1-1 Applicability (a)*. https://dps.georgia.gov/georgia-department-public-safety-transportation-rulebook.

Defendant Prime was not authorized to self-insure its motor carrier operations under either Georgia or Federal law, as a matter of law, at the time of the fatal incident in this case, or to self-insure its motor carrier operations at any time thereafter through the filing of this complaint for damages. *Id.*

## FACTUAL ALLEGATIONS

10.     Prior to October 8, 2022 Ben's employer, Fuji Vegetable Oil, Inc. (hereinafter "Fuji") and Defendant TICO entered into a written agreement where TICO agreed to provide tractors that it manufactured, owned, and maintained to Fuji for its use in its food oil processing/manufacturing operations at the Georgia Port at 120 Brampton Road, Savannah, GA.

11.     Fuji's plant in Savannah manufactures and or processes food grade vegetable oils for human consumption, and it uses Defendant TICO's tractors and other motor carriers' tanker or tank trailers to move the processed oil into empty tankers, then repositions those full tankers onto Fuji's tanker storage lot before the tankers are transported to Fuji's customers by various motor carriers including defendant Prime.

12.     Defendant Prime has a written agreement with Fuji to act as one of its principal motor carriers for Fuji transporting its oils to its customers, and Prime maintains a tanker kosher wash facility near Fuji's plant at the Port, "Savannah Kleen," where empty tankers go to be cleaned inside the tankers before they are re-loaded with Fuji's food grade oils processed at the Savannah plant.

13.     Fuji drivers move clean tankers with TICO tractors from defendant Prime's Savannah Kleen wash facility to an empty tanker staging lot at Fuji's plant at the port.

14.     Defendant Prime also maintains tankers at its wash facility to be cleaned, and Prime also stages or parks clean tankers at Fuji's plant at the Port for loading by Fuji and its employees.

15.     Once Prime's tankers are loaded by Fuji employees at Fuji's plant the tankers are then moved to a transit staging area at Fuji's plant by Fuji drivers operating defendant TICO's tractors.

16.     Prime entrusts its tankers to Fuji for movement to its staging area, and Prime is aware that Fuji uses TICO tractors for that purpose, including its knowledge that the TICO tractors have narrow wheel bases, only one set of drive axles, they are lighter than traditional Class 8 tractors and that the elevating fifth wheels transported by Prime and its drivers, leased drivers, and other motor carriers assisting Prime in its motor carrier operations in delivering Fuji's oils to Fuji's customers.

17.     TICO, Prime and Fuji are aware that TICO's tractors are at high risk of rollover due to their high center of gravity, narrow wheel base, the fifth wheel boom elevating the filled tankers with fluids shifting the weight to the tanker trailer wheels, which increases the risk of rollover due to the J and other sharp turns required to move filled tankers on the Fuji plant from the filling station to the filled tanker staging area on its plant.

18.    Shortly prior to October 8, 2022 the decedent Ben Jordan went to work for Fuji as a "yard dog" or driver of its commercial vehicle combinations including TICO's tractors and tanker trailers at its leased premises at the Port of Savannah that Fuji leases from the State of Georgia.

19.    Ben worked for Fuji for less than four months and had recently finished his driver's training by Fuji in the weeks shortly before his death on October 8, 2022 and he was operating his TICO yard tractor at the time of the incident resulting in his death as shown in the Port Authority's surveillance video:

### *SEE <u>EXHIBIT 1</u>, PORT AUTHORITY AXON VIDEO OF OCTOBER 8, 2022 FATAL INCIDENT ATTACHED TO THIS COMPLAINT*

20.    Fuji's plant facility roads at the Port are "tight" or narrow and require that Ben and the other drivers of the "yard dog" TICO tractors make a tight J turn to move loaded tanks of food grade vegetable oils from the oil loading station to a side lot on the Fuji facilities, to the right of the area shown on the video above.

21.    TICO and Prime both were aware that their commercial motor vehicles would be used to make these tight turning movements with tankers elevated with fluids shifting weight onto the wheels of the trailers as shown in the video at *Exhibit 1*.

22.    Defendants ACE and Prime are obligated by O.C.G.A. §§ 40-1-112(c), 40-2-140(d)(4) to pay any verdict and resulting judgment included in the jury's verdict at trial as motor carrier insurers to plaintiffs obtain against defendant Prime,

and to indemnify their named insured, additional insureds under the motor carrier policy of insurance issued to Prime, as provided by Georgia law up to and including the full policy limits of liability and indemnity coverage for the motor vehicle incident in question, and plaintiffs demand judgment against these motor carrier insurers too at trial.

## I.    **TICO's Strict Liability & Negligence**

### A.  *Strict Liability*

23.    TICO manufactures DOT and EPA approved tractors and slightly modified tractors for use on the roadways, port roads, and ports, and it manufactured the tractor Ben was operating on October 8, 2022 at the time of his death shown at *Exhibit 1*.

24.    TICO also operates as a private motor carrier under its USDOT authority to transport trailers, tankers, containers, etc. using its manufactured tractors in interstate and intrastate commerce.

25.    TICO negligently manufactured the tractor or commercial motor vehicle Ben was operating at the time of his death with a narrow wheelbase, it only has one set of drive axles, and a dangerous fifth wheel that is designed and marketed by TICO to its customers to elevate the fifth wheel above the vehicle drive axle with an elevating fifth wheel and boom that elevates, the fifth wheel then engages the king pin and lift trailers, chassis, and tankers off level surfaces

without the tractor driver having to exit the tractor or to retract the landing gear on the trailers, tankers, or chassis it is hauling as applicable; "without the driver having to exit the tractor" is present in TICO's marketing materials and videos.

26.    TICO knew or should have known that its tractors and the one involved in Ben's death that it owned, leased, and controlled were defective, dangerous, and posed a serious risk of injury when it leased it to Fuji prior to October 8, 2022, and that TICO maintained thereafter.

27.    TICO maintained possession, control, and ownership of the subject tractor it manufactured at all times, TICO agreed to maintain it in good repair and condition, TICO modified and replaced the original components on Ben's tractor after its original manufacturing, and prior to leasing the tractor to Fuji for its and Ben's use before October 8, 2022.

28.    TICO is strictly liable under Georgia's product liability statute, O.C.G.A. § 51-1-11 and interpreting caselaw, for its defectively designed, maintained, modified, and manufactured tractor resulting in the wrongful death of Ben Jordan and the claims of his Estate.

29.    TICO negligently designed and manufactured its tractors with narrow wheelbases creating a high center of gravity, only one set of drive axles with limited surface tension to the roadway relative to traditional Class 8 tractors, and with dangerous elevating fifth wheels that create an even high center of gravity

when its tractors make tight J, U or other turns on the roadways making its tractors susceptible to rollovers.

30.    TICO's defective tractor was a contributing proximate cause of Ben's death on October 8, 2022, and TICO is strictly liable for Ben's death. O.C.G.A. § 51-1-11.

### B.    Negligent Failure to Warn

31.    TICO knew and or reasonably should have known of the defects in its design and manufacture of the subject TICO tractor it leased to Fuji and that TICO maintained, modified, and provided to Fuji for its and Ben's use, and TICO failed to warn either Fuji or Ben of its defective and poorly maintained tractor.

32.    TICO provided no written or oral warnings to Fuji or Ben that its tractors, with narrow wheelbases, only one set of drive axles, and with heavy loads on its elevated fifth wheel were unstable, and prone to rolling or tipping over and that its tractors have overturned at ports around the country and in Savannah.

33.    TICO failed to provide Ben as an employee of its lessee with any training on the use of its tractors, or its safe operation and warn him of its defects or problems with its high center of gravity, particularly when the fifth wheel is elevated.

34.    TICO has had multiple rollovers and tipping of its tractors hauling trailers, tankers, chassis with containers, using its elevated fifth wheels hauling

heavy loads at the Port of Savannah and other Ports where TICO leases, sells, and rents it port tractors due to the high center of gravity of its tractors when the fifth wheel boom arms are fully extended.

35.    TICO intentionally, negligently failed to warn either Fuji or Ben about the defective design of its tractors, and the problem or risk of rollovers when turning its tractors with the fifth wheel boom arms extended as shown in *Exhibit 1.*

36.    Ben's death was a foreseeable consequence of the negligent failure to warn by TICO with the defects and problems with TICO's tractor owned by it and leased to Fuji's for Ben's use.

37.    TICO's negligent failure to warn Fuji or Ben of the problems with its tractors was a contributing proximate cause of Ben's death.

### C.    *Negligent Failure to Maintain*

38.    Defendant TICO maintained, modified after its original manufacturing, and retained ownership of, and it had control of the tractor it manufactured and leased to Fuji for use at its facilities that Ben was operating it at time of its death.

39.    Videos from the Port Authority show TICO tractors at the scene of the incident, after the incident, towing away the TICO tractor it controlled and maintained for repairs.

40.     Defendant TICO negligently maintained the tractor including negligently maintaining, modifying, and replacing the controls for the elevating fifth wheel, using substandard bolts on the fifth wheel components that stretched, sheared, and failed during the incident, faulty welds that failed during the incident causing the fifth wheel to separate with the Prime tanker when it rolled during the turn, and providing substandard and shoddy tractor motor vehicles for use by Fuji employees, including Ben.

41.     Ben as the newest employee acting as a yard dog for Fuji at its facilities was provided the TICO tractor in the worst condition available for Fuji drivers provided by TICO to Fuji for its use under its Agreement with TICO.

42.     TICO failed to fix or repair the problems on its elevating fifth wheel on Ben's tractor on October 8th including replacing its adjustable fifth wheel joystick with a button controlled elevating device that elevated the fifth wheel to its highest point making the tractor unstable and top heavy, failing to properly test the bolts on the fifth wheel for shearing and metal strength, failing to properly inspect welds on the fifth wheel repaired by TICO employees or contractors it engaged to make those repairs.

43.     TICO has a duty in law and by contract with Fuji to provide it safe and properly maintained vehicles, and it negligently provided unsafe tractors to Fuji for Ben's use.

44.     TICO's negligence in failing to properly maintain its tractor it manufactured, owned, maintained, controlled, and leased to Fuji was a contributing proximate cause of the incident in *Exhibit 1* above, and Ben's untimely death.

## II.    Prime's Negligence

45.     Prime is a motor carrier for hire including use of a fleet of tanker trailers, including food grade tanker trailers, to haul food grade oils, food stuffs, etc. into and out of the Savannah ports for various customers it hauls products for, including Fuji.

46.     Prime maintains and operates a tanker wash facility, Savannah Kleen, in Port Wentworth, GA where it washes its and other motor carriers' food grade tanker trailers before driving them to Fuji's and other food stuff companies' facilities operating on or near the port of Savannah:



**_Exhibit 2_, Savannah Kleen Facility Operated by Prime, Port Tractor & Tank Shown[2]**

*(double click on photo inset to rotate or expand its size)*

47.     Fuji and Prime entered into a written or oral agreement wherein Prime entrusted its tanker trailers for loading by Fuji drivers with TICO yard trucks on Fuji's facilities, and transporting those tanker trailers from Prime's Savannah Kleen wash facility to Fuji's plant for loading and repositioning for pickup by Fuji drivers, including Ben, at the Fuji's plant, on and prior to October 8, 2022.

48.     Prime knew and was aware that Fuji drivers would be moving its tanker trailers to and from its Savannah Kleen facilities, onto the tight roadways of the Fuji plant with loaded tanks of Fuji manufactured or re-manufactured food grade oils, and repositioning Prime's tanker trailers for transport by Prime drivers or other motor carriers assisting Prime in its motor carrier operations as provided by Georgia law, including Georgia's adoption of the FMCSA Regulations.

49.     Prime knew that "yard dog" drivers operating yard dog tractors such as the TICO Pro Spotter and similar tractors have elevating fifth wheel booms, with fifth wheels welded by TICO onto the elevated booms, and that its yard dog tractors are used to elevate Prime's tanker trailers without the drivers exiting the TICO tractors or retracting the landing gear creating a dangerous hazard and

---

[2] See https://www.primeinc.com/drive-for-prime/savannah-kleen/

increased risk of rollover in turning movements including J turns for TICO tractors

moving tankers:



***Exhibit 3*, Prime Tanker on Its Side Following the Rollover, 8 Oct 22**
*(double click on photo inset to rotate or expand its size)*



**_Exhibit 4_, Damaged Prime Tanker Upright Following the
Incident, 8 Oct 22**
*(double click on photo inset to rotate and increase its size)*

50.     Prime was the owner of the Walker Stainless tanker shown in the
above photograph on October 8, 2022 and it negligently entrusted that tanker to
Fuji so that its drivers could move it to clean it, fill it with Fuji's oils, and
reposition that tanker for transport by Prime and its drivers, leased drivers,
statutory employees as part of Prime's motor carrier for hire operations.

51.     Defendant ACE is the motor carrier insurer for Prime's tanker trailers
including the Walker tanker shown above in _Exhibits 3 & 4_.

52.     Prime knew of the risks of its tankers moving on Fuji's plant facilities,
roadways, or other surfaces with 47,000 pounds or more of food grade oils with

TICO's tractors that elevate the fifth wheel and Prime's tankers creating a dangerous risk of rollover of its tankers, when operated and pulled by a TICO tractor in J or similar sharp turns due to the high center of gravity and the shifting of the liquid weight during movements.

53.    ACE is obligated to reimburse and indemnify Prime for claims and judgments arising out of Prime's and Fuji's use of its tanker trailer vehicles arising out of Prime's motor carrier for hire operations, including Prime's negligent entrustment of it to Fuji. *See* O.C.G.A. §§ 40-1-112(c) and 40-2-140(d)(4).

54.    Prime negligently supervised Fuji's and its drivers expected, intended, and actual use of its tanker trailers by Fuji at its Savannah plant facilities under its written or oral agreements with Fuji, it knew or should have known of the dangerous risk of its tankers when transported by a lighter high center of gravity of vehicle shown in *Exhibit 1* rolling over, and its negligence is a contributing proximate cause of Ben's death.

55.    Prime negligently trained and provided no training to Fuji or its drivers including Ben, and it gave no warning of the risk of rollover to Fuji or its drivers when Prime tankers are elevated and the liquids, oils and that weight in its tankers are elevated and redistributed to the back of its tankers onto the tanker trailer axles as shown in *Exhibit 1* as a turning movement is made creating a dangerous, heightened risk of rollover of its tanker trailers.

56.     Prime's negligence was a contributing proximate cause of the rollover of its tank or tanker trailer in combination with TICO's tractor on October 8, 2022, and its negligence is a contributing proximate cause of the rollover and Ben's death, and his conscious awareness of a rollover and his mental and physical pain and suffering prior to this death.

## FIRST CLAIM – WRONGFUL DEATH CLAIM OF TINA MUNN

57.     Plaintiffs reallege and incorporate by reference all prior and succeeding paragraphs in this complaint.

58.     Tina Munn is the surviving biological parent of Ben, he died without a spouse, without natural children or adopted children, and she is the sole person entitled to bring the wrongful death claim.

59.     Defendants' negligence, strict liability, alone or in combination with each other as joint tortfeasors are liable for the reckless, negligent and negligent per se conduct of defendants resulting in the wrongful death of Ben Jordan on October 8, 2022.

60.     The sole proximate cause of Ben Jordan's death is the strict liability, negligent and negligence per se conduct of the defendants.

61.     Tina Munn is entitled to recover for Ben Jordan's wrongful death as provided by O.C.G.A. § 51-4-1, 51-4-2 & 19-7-1(c).

62.     Plaintiffs demand judgment against defendants in an amount to be determined by a jury at trial in its fair and enlightened conscience in an amount it deems appropriate for the wrongful death claim of Tina Munn, for the full economic and non-economic value of Ben Jordan's life, but in an amount not less than $25,000,000.00 as provided by O.C.G.A. § 51-4-2 et seq. and interpreting caselaw.

## SECOND CLAIM – ESTATE CLAIMS BY TINA MUNN AS THE COURT APPOINTED PERSONAL ADMINISTRATOR OF THE ESTATE OF BEN JORDAN

63.     Plaintiffs reallege and incorporate by reference all prior and succeeding paragraphs in this complaint.

64.     Tina Munn is the Court Appointed Personal Administrator of the Estate of Ben Jordan.

65.     Munn on behalf of Ben Jordan's Estate is entitled to recover for his last funeral, burial, and medical expenses.

66.     Ben suffered physical and mental pain and suffering arising out of the collision on October 6, 2022, he was consciously aware of an impending rollover of his tractor and its elevating perpendicular to the ground before slamming to the pavement and he suffered physical and mental pain and suffering before he died enroute or at the hospital after being conscious and communicating with his coworkers and EMS personnel at the scene, his Estate's Personal Administrator is

entitled to recover for last funeral and medical expenses, and his conscious mental and physical pain and suffering, including his awareness of an impending crash.

67.    Ben's last medical expenses exceed $20,000.00 arising out of the collision on October 8, 2022.

68.    Munn, as the Court Appointed Personal Administrator of her son's Estate, is entitled to recover for his conscious mental and physical pain and suffering prior to his death, as provided by law, including Ben's conscious apprehension, awareness of a rollover of his truck and tanker and being aware and conscious of the rollover when he exited the TICO truck with the assistance of his coworkers.

69.    Munn, as the Court Appointed Personal Administrator of her son's Estate, demands judgment against the defendants in an amount not less than $1,000,000.00 to be determined by a jury at trial in its fair and enlightened conscience for the Estate's claims for last funeral, burial, medical expenses, and mental and physical pain and suffering by Ben prior to his death, as provided by O.C.G.A. § 51-4-5.

## **THIRD CLAIM – ATTORNEYS' FEES & COSTS O.C.G.A. § 13-6-11**

70.    Plaintiffs reallege and incorporate by reference all prior and succeeding paragraphs in this complaint.

71.     Defendants' conduct set out in this complaint shows a species of bad faith in the underlying collision entitling Plaintiffs to a recovery of attorneys' fees and costs as a matter of law.

72.     There is no bona fide dispute in this case as to any issue of liability for the fatal rollover collision of this tractor and trailer owned and controlled by the defendants, and the rollover as the sole proximate cause of the untimely death of Ben Jordan.

73.     Plaintiffs demand judgment at trial against Defendants for their attorneys' fees and costs as provided by O.C.G.A. §§ 13-6-11 and or 9-11-68, to be determined at trial by a jury in its fair and enlightened conscience.

74.     O.C.G.A. §§ 13-6-11 nor 9-11-68 create independent causes of action in law, these statutes merely establish the circumstances of the defendant's conduct that plaintiffs may recover the expenses of litigation as additional elements of damages.

### **PRAYER FOR RELIEF**:

WHEREFORE Plaintiffs pray for judgment against the defendants and that they be granted the following relief:

(a)     That service of process issue and Defendants be served with the Plaintiffs' complaint and summons as provided by law;

(b)     That Plaintiffs have and recover an award of compensatory damages against Defendants including general and special damages to be determined by the jury at trial in its fair and enlightened conscience but in an amount not less than $25,000,000.00 for the claims of Tina Munn, individually, for Ben's wrongful death and on behalf of her deceased son's Estate as its court appointed personal administrator for the Estate's claims pled above;

(c)     That Plaintiffs have and recover an award of compensatory damages against Defendants including all general and special damages included in the verdict at trial, plus pre- and post-judgment interest on said judgment, other damages in amounts to be proven at trial, and to have judgment entered thereon, but in an amount not less than $25,000,000.00;

(d)     That Plaintiffs have and recover an award for expenses of litigation, including reasonable attorneys' fees as provided by O.C.G.A. §§ 13-6-11 and 9-11-68, against Defendants, and have judgment entered thereon;

(e)     That all costs be taxed against the Defendants;

(f)     That Plaintiffs have such other and further additional relief as the Court deems just and appropriate under the circumstances; and

(g)    PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS,

ISSUES, COUNTERCLAIMS, CROSS-CLAIMS, THIRD PARTY

CLAIMS, OR ANY AMENDMENT THERETO TO THIS

COMPLAINT FOR DAMAGES.

RESPECTFULLY SUBMITTED,

**COUNSEL FOR PLAINTIFFS:**

By:    */s/ Terry D. Jackson*
      TERRY D. JACKSON
      Georgia Bar No. 386033



*"We Know Trucks"*
[www.terryjacksonlaw.com](http://www.terryjacksonlaw.com)

TERRY D. JACKSON, P.C.
600 Edgewood Avenue
Atlanta, Georgia 30312
(404) 216-5312 cell
(404) 659-2400 office
(404) 659-2414 fax
[terry@terryjacksonlaw.com](mailto:terry@terryjacksonlaw.com)

By:    */s/ Alex V. Salzillo*
      ALEX V. SALZILLO
      Georgia Bar No. 751894

Casino Law Group, LLC
480 Mall Boulevard
Savannah, GA  31406
(912) 355-1500
(912) 236-6797 facsimile
[asalzillo@casinolawfirm.com](mailto:asalzillo@casinolawfirm.com)

# EXHIBIT 1

**PORT AUTHORITY AXON VIDEO OF OCTOBER 8, 2022 FATAL INCIDENT**

*TO BE PROVIDED TO COURT ON FLASH DRIVE*

# EXHIBIT 2



**Exhibit 2 - Page 1 of 1**

# EXHIBIT 3



Exhibit 3 - Page 1 of 1

# EXHIBIT 4



**Exhibit 4 - Page 1 of 1**